UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS MERWIN, JR.,

       Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No. 1:04-CV-825
　　　　　　　　　　　　　　　　　　　Hon. Gordon J. Quist
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).[1]

Plaintiff was born on August 8, 1950, completed his GED, and had additional training as a carpenter apprenticeship and a corrections officer (AR 46, 68).[2] He stated that he became disabled on July 11, 1999 (AR 46). Plaintiff had previous employment as a carpenter, corrections officer and building trades crew leader (AR 76). Plaintiff identified his disabling conditions as numbness and swelling of the feet and legs, numbness in both hands, chronic headaches and coronary artery disease (AR 62). After administrative denial of plaintiff's claim, an Administrative

---

[1] As an initial matter, the court notes that plaintiff's brief is difficult to read. It appears that the body of the brief contains type smaller than 12 point type and does not appear to be double spaced, contrary to W.D. Mich. LCivR 10.1 ("Paper Size and Format"). In addition, plaintiff's numerous (98) footnotes are printed in extremely small type. The court appreciates counsel's thorough discussion of the issues. However, counsel is advised that future briefs may be rejected for failing to comply with the court's local rules.

[2] Citations to the administrative record will be referenced as (AR "page #").

Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 26, 2003 (AR 20-27). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 26). Second, the ALJ found that he suffered from severe impairments of depression, anxiety-related disorder, coronary artery disease and headaches (AR 26). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 26). The ALJ decided at the fourth step that plaintiff had a residual functional capacity (RFC) as follows:

> The claimant retains the capacity to lift and/or carry items weighing twenty pounds on an occasional basis. He retains the capacity to lift and/or carry items weighing up to ten pounds on a frequent basis. The claimant is able to stand and/or walk, with normal breaks and lunches, at least six hours in a normal eight-hour workday and he can sit at least six hours in a normal eight-hour workday. The claimant is limited to jobs requiring only occasional handling, fingering, and use of keyboards. He can do work requiring him to climb, stoop, crouch and/or crawl no more than one-third of the time in a normal eight-hour workday. He must avoid all exposure to hazards, and must avoid even moderate exposure to extreme heat and extreme cold. The claimant's mental impairments impose moderate restrictions in his social functioning and only mild restrictions on his consistency, persistence and pace. The claimant's ability to perform work-related activities is otherwise unrestricted. The medical record supports a finding that the claimant's mental status would place moderate restrictions on his ability to deal with the general public and with coworkers.

(AR 22, 26). The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 26).

At the fifth step, the ALJ determined that plaintiff was capable of performing a range of light work (AR 26). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in the lower peninsula of Michigan: service/warranty clerk (2,300

4

sedentary jobs); maintenance scheduler (1,900 sedentary jobs); stock control clerk (3,400 light jobs); security guard (11,000 light jobs); file clerk (4,000 light jobs), service station attendant (6,000 light jobs); and mail clerk (4,800 light jobs) (AR 25-26). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 26-27).

**III. ANALYSIS**

Plaintiff raises three issues on appeal.

**A.  The ALJ erred in assessing the severity of plaintiff's impairments and in assessing plaintiff's credibility.**

**1.  Non-severe impairments**

First, plaintiff contends that the ALJ erred by determining that plaintiff's gastrointestinal problems, neuropathy (involving both the upper and lower extremities), diabetes and carpal tunnel syndrome were not severe impairments. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* Here, the ALJ found that plaintiff suffered from severe impairments of depression, anxiety-related disorder, coronary artery disease and headaches (AR 26). The ALJ then

proceeded with the five-step sequential evaluation (AR 21-26). Accordingly, the ALJ's failure to classify certain impairments as "severe" is not an error requiring reversal.

Furthermore, the record reflects that the ALJ considered plaintiff's "non-severe" impairments. The ALJ found that there was little medical evidence of plaintiff's "numbness and swelling in his hands and feet" and determined that this condition was not vocationally significant (AR 23). In reaching this determination, the ALJ noted that plaintiff had never been treated with medications for this problem, which manifests itself as a burning sensation when he sleeps (AR 23). The ALJ's decision did not discuss plaintiff's claim that he suffered from a severe impairment of diabetes. While plaintiff's physician, John M. Eggers, M.D., makes a brief reference to plaintiff's right hand neuropathy as "probably [a] combination of carpal tunnel and diabetic [sic]" (AR 281), there is no indication that plaintiff has been treated for diabetes. In fact, the consultative examination performed by Thomas W. Keaveney, M.D., makes no reference to a history of diabetes or any treatment for that condition (AR 219-21).

The ALJ noted that most of plaintiff's records regarding his gastrointestinal problem are from the "distant past" and predate the alleged onset (AR 23). The ALJ noted that plaintiff underwent an esophagogastroduodenoscopy on March 6, 2001, which indicated that he had a hiatal hernia, duodenal ulcerations and gastritis (AR 23). However, the ALJ noted that plaintiff's gastrointestinal problem is treated with medication, that it has not been a major problem for him since July 2002 and that plaintiff did not list this as a severe impairment when he filed his claim (AR 23). Finally, although the ALJ did not find that plaintiff suffered from a severe impairment of carpal tunnel syndrome, the ALJ apparently considered plaintiff's complaints by limiting him to jobs requiring only occasional handling, fingering and use of keyboards (AR 22).

### 2.     **Plaintiff's credibility**

Next, plaintiff contends that his complaints are credible and supported by the record, contrary to findings made by the ALJ. It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ may discount a claimant's credibility where the ALJ  "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

Plaintiff takes issue with the ALJ's opinion that:

> Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 CFR §§ 404.1529(c)(3) and 416.929(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted, and that the residual functional capacity finding in this case is justified. The claimant testified that he is able to drive and does drive. He is able to walk about two miles at a time. He testified that he is able to stand about two hours at a time and has no problems sitting. He testified that he is able to lift items weighing up to twenty pounds and has no problems climbing stairs. He reads newspapers and books and walks his dog. He is able to watch and follow television programs. He avoids crowds because they make him nervous.
>
> The claimant testified that he awakes every morning with a headache and suffers from more severe migraine headaches one or two times per month. He testified that the daily headaches disappear by breakfast. I find the claimant's testimony regarding the frequency and severity of his migraines is overstated and not fully supported by the medical evidence.

7

(AR 23-24).

Plaintiff contends that the ALJ did not rely on evidence in the record and contests some of the testimony cited by the ALJ. Plaintiff's Brief at 15-17. The court disagrees with plaintiff's contention that the ALJ's credibility determination was "inconsistent and contradictory." *Id.* at 15.

Plaintiff testified that he has had daily headaches "since the 70's probably," that he had them while he was working and that they would usually disappear by breakfast time (AR 323). Plaintiff testified that the headaches may be related to his sleeping patterns, that he was prescribed a treatment for the headaches (a "CPAP machine") in 1997, but that he has not used the prescribed machine "in a long time" (AR 323-24). Plaintiff testified that the machine helped "[a] couple of times" but "sometimes" he would still wake up with a headache (AR 323). Plaintiff also testified that he suffers from migraine headaches once or twice a month, that the headaches can last up to two days and that he is not functional when he has a migraine headache (AR 324, 337).

There is no question that plaintiff has received medical treatment for headaches for many years. Nevertheless, the ALJ could discount plaintiff's claim that he suffered from disabling headaches. First, plaintiff has worked for years with the headaches, which by his own testimony usually disappear at breakfast time (AR 323-24). Where a claimant has worked with an impairment over a period of years, the ALJ is entitled to conclude that his condition was not disabling based upon his ability to work with the impairment in the past. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d 450, 452 (6th Cir. 1986).

Second, plaintiff's compliance with his prescribed treatment is relevant to the disability determination. As a general rule, an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability. *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1111 (6th Cir. 1984); 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician). *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011(8th Cir. 2005) (diabetic claimant's non-compliance with dietary regime and medication is inconsistent with an allegation of disability). Here, plaintiff testified that he had not used a prescribed treatment for the headaches, i.e., the CPAP machine, "in a long time" (AR 323-24). Plaintiff's failure to follow this prescribed treatment detracts from his credibility and bars him from collecting benefits. *See generally, Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (finding that claimant's failure to lose weight and stop smoking was not consistent with the lifestyle of a person suffering from intractable pain); 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician).

In addition, the ALJ may consider plaintiff's household and social activities in evaluating a disability claim. *See Blacha*, 927 F.2d 228 at 231. In the present case, plaintiff testified: that he can "probably stand for a couple of hours;" that he has been walking "about a mile a day" and could probably "walk a couple of miles;" that he has no problems sitting for an extended period of time; that his physician placed him on a 20 pound weight limit because of his heart; that he has "no problem climbing stairs" and that he built a two story house as "one way to get exercise;" in his spare time he takes his dogs walks and has been "reading a lot of books;" that he watches four hours of television per day; that he washes dishes and vacuums; mows the lawn with a riding

lawnmower; uses leaf blowers; sleeps "pretty good;" takes care of his own personal grooming; and goes to the grocery store once "every couple of weeks;" and drives three or four times a week (AR 313, 329-31, 333-35).

Plaintiff's own testimony supports the ALJ's RFC determination that he can perform a limited range of sedentary and light exertional work (AR 22, 26). Such endeavors are not indicative of a person who is disabled by painful headaches. *See Pena v. Commissioner*, No. 98-1833, 1999 WL 775832 (6th Cir. Sept. 24, 1999) (claim of disabling pain belied by claimant's performance of daily activities such as preparing meals, grocery shopping, mowing lawn, taking out garbage and watching grandchildren); *Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 713 (6th Cir. 1988) (claimant found not disabled by severe pain when he was able to drive, do housework, visit relatives regularly, babysit occasionally, read, watch television, feed chickens and garden occasionally); *Gist v. Secretary of Health and Human Servs.*, 736 F.2d 352, 358 (6th Cir. 1984)(capacity to perform daily activities on a regular basis will militate against a finding of disability).

Contradictions exist in the record. Accordingly, the ALJ could properly discount plaintiff's testimony regarding the severity of his headaches and other medical conditions. *See Walters*, 127 F.3d at 531.

> **B. The ALJ erred in concluding that there are a significant number of jobs in the national economy which could be performed by plaintiff.**

Finally, plaintiff contends that the ALJ erred in determining that plaintiff could perform other work in the national economy. Here, the ALJ found that plaintiff could perform 33,400 jobs in the lower peninsula of Michigan. An ALJ's finding that a plaintiff possesses the

capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The ALJ's determination that plaintiff can perform 33,400 jobs is based upon the VE's responses to two hypothetical questions which included the limitations similar to those as set forth in the RFC determination. In a separate hypothetical question, the ALJ added a limitation that such an individual "gets migraine headaches on the average of once or twice a month which last up to a day, sometimes longer" and then asked the VE whether this additional limitation would have any vocational impact with respect to the 33,400 identified jobs (AR 348). The VE responded that:

> Yes, your reference to one to two months [sic] and I assume if they're severe then that would not allow him to work those days. I believe if -- the difference would be if it's once [sic] time a month, I feel most employers will allow up to one absence a month. That would probably be acceptable. Because of headaches [sic] one needing to miss two days of work per month, that would usually exceed the adopted norm. I just would comment that the Claimant testified between his migraines [sic] headaches and daily headaches, et cetera, for a number of years, I believe while he was continuing to work at that time.

(AR 348).

The ALJ subsequently asked the VE the following question:

ALJ:   Assuming I found the Claimant's testimony relative to his pain, discomfort and

11

>    limitations to be entirely credible, would he be able to -- would there still be a significant number of jobs in the regional or national economy that a person with these limitations could perform?
>
> VE: I believe so, Your Honor. Again, just the reference to the actual degree of the migraine headaches and the number of days he would need to miss work because of those. I believe if that would exceed more than one day per month on average, that probably would preclude work.

(AR 349).

The VE's testimony indicates that if plaintiff missed more than one day per month on average due to his migraine headaches, then this condition would preclude work. However, as the court previously discussed, the ALJ did not find plaintiff credible regarding the disabling nature of his migraine headaches. On the contrary, the ALJ found that "[plaintiff's] testimony regarding the frequency and severity of his migraines is overstated and not fully supported by the medical evidence" (AR 24). An ALJ's hypothetical question only needs to include those limitations which the ALJ accepts as credible. *See Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 231. The ALJ could properly discount plaintiff's claim that he would miss two days of work per month due to the migraine headaches. Accordingly, the ALJ's determination that plaintiff could perform 33,400 jobs is supported by substantial evidence.

**IV.     Recommendation**

I respectfully recommend that the Commissioner's decision be affirmed.


Dated: January 25, 2006                           /s/ Hugh W. Brenneman, Jr.
                                                  Hugh W. Brenneman, Jr.
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).